In the Matter of the Application for an Order Requiring the ANTI-SALOON LEAGUE OF NEW YORK to File a Statement and Account of Receipts and Expenditures in Connection with the Fall Primary Election and the General Election of 1922.

Supreme Court, Albany Special Term, January (Received March, 1923).

**Election Law — Anti-Saloon League of New York a " political committee " — must designate treasurer and file statement of receipts and expenditures — Election Law, §§ 321, 323, 324.**

The term " political committee " as used in section 323 of the Election Law is broad enough to include the Anti-Saloon League of New York which is merely a continuance of the New York Anti-Saloon League which was incorporated in 1905 as a membership corporation.

Under section 324 of the Election Law said Anti-Saloon League may be compelled by an order of the court to designate a treasurer and to file a statement of such appointment with the secretary of state as provided by statute.

The said Anti-Saloon League may also be compelled to make and file pursuant to sections 321 and 323 of the Election Law a statement of receipts, expenditures and liabilities received, made and incurred in connection with the primary election of 1922 and also in connection with the general election of that year.

APPLICATION to compel filing of statement under Election Law.

*Carlin & Gillet,* for petitioners.

*Stanchfield & Levy (Edgar T. Brackett,* of counsel), for respondents.

STALEY, J.  The treasurer of every political committee which in connection with any election receives or expends any money shall file a sworn statement setting forth all the receipts, expenditures and liabilities of the committee.  Election Law, § 321.

The statement of a treasurer of a political committee shall be filed in the office of the secretary of state within twenty days of the election or primary election to which it relates.  Election Law, § 323.

The term " political committee " means any committee or combination of three or more persons co-operating to aid or to promote the success or defeat of a political party or principle, or of any proposition submitted to vote at a public election: *or to aid or take part in the election or defeat of a candidate for public office, or to aid or take part in the election or defeat of a candidate for nomination at a primary election or convention,* including all proceedings prior to such primary election, or of a candidate for any party position voted for at a primary election, or to aid or defeat the nomination by petition of an independent candidate for public office.  The statute expressly declares that the term shall not

apply to any committee or organization for the discussion or advancement of political questions or principles without connection with any election. Election Law, § 320.

This proceeding was initiated by an order to show cause, served upon the officers and employees of the Anti-Saloon League, to secure an order directing the league to designate a treasurer pursuant to section 324 of the Election Law, and to file a statement of such appointment with the secretary of state, and to file a statement of receipts, expenditures and liabilities required to be made and filed pursuant to sections 321 and 323 of the Election Law.

The respondents urge that the proceeding should be dismissed for the reasons: (1) That the facts fail to establish that they come within the definition of a political committee as set forth in section 320 of the Election Law; (2) that the league is a body corporate, a single body, and not one of a committee or combination of three; (3) that the league is an organization for the discussion and advancement of political questions and principles without connection with any election; and (4) that the proceeding is defective because no undertaking has been filed as required by subdivision 4 of section 334 of the Election Law.

The purpose of the statute involved in this proceeding is plain. It requires publicity of moneys received and expended in connection with the activities of a committee having a relation to elections and designed to aid or defeat candidates for public office and propositions submitted to the vote of the electors at a public election. Its intent is not to limit its provisions to strictly lawfully constituted political committees created by force of the provisions of the Election Law. Its application must be tested by the character of the act done, by the manner in which it was done and by the purpose, no matter how commendable or how sinister, which prompted such act. The statute should have a liberal and fair interpretation in order to carry out its obvious intent. *Matter of Woodbury*, 174 App. Div. 569.

It is unnecessary here to refer in great detail to the nature of the evidence presented herein which bears upon the relation of the acts of the respondents in aid and in opposition to candidates for public office. Suffice it to say, that the proof conclusively discloses that the Anti-Saloon League of New York, through its officers and employees and at its expense, by the printing and distribution of publications, bulletins, circulars and letters, by public addresses made to qualified electors directly referring to the record and qualifications of candidates for nomination and election and by assistance rendered in the organization and direction of activities of workers at the polls, was an active participant to aid and defeat

candidates for public office at the primary and general election of 1922.

The legal status of the league is raised by the claim of the respondents that it is a corporation, and upon the assertion of the petitioners that the proof does not establish it to be such. The New York Anti-Saloon League was incorporated by filing in the office of the secretary of state on the 9th day of February, 1905, a certificate of incorporation under the Membership Corporations Law. The certificate declares that the incorporators were " desirous of associating " themselves together as a corporation, " to form and foster public sentiment by agitation and education against the liquor traffic and to direct that sentiment toward the enactment and enforcement of laws restricting and suppressing the traffic in intoxicating liquors as a beverage." The number of directors authorized by the certificate was seven.

The respondent league is a continuance of that corporation under the name of the Anti-Saloon League of New York, which name was assumed by the corporation by amendment of its constitution at the annual meeting of the board of trustees held May 20, 1913. Its constitution also provides for twelve directors instead of seven as required by the certificate of incorporation.

While the change of name and the increase in the number of directors were not legally effectuated by a compliance with the statutory requirements in that regard, the fact remains that the respondent league is a continuance of the corporation and if not a *de jure* corporation is certainly a *de facto* corporation. As a corporation, however, it is not exempt or rendered immune from being a political committee when its activities, in whole or in part, come within the definition prescribed by statute for that term. If it were otherwise there would be a practical suspension of the law, and its purpose would be nullified by the incorporation of political organizations and clubs and various groups seeking to influence political action, but with the desire to conceal their financial operations carried on in furtherance of that purpose. As a corporation the league may be a corporate entity, but it is nevertheless, as such, a combination of three or more persons (Mem. Corp. Law, § 41) and the recital in its certificate of incorporation indicates that it is an association of more than three persons.

This view is sustained by section 327 of the Election Law, which expressly excepts from the application of the statute a corporation engaged in the publication and distribution of any newspaper, and thus indicates a clear intent to include other corporations, as a combination of three or more persons, whose activities come within the scope of section 320.

The activities of the league established in this proceeding negative the claim that it comes within the exception contained in the statute of the term " political committee," and that it is an organization for the discussion and advancement of political questions or principles without connection with any election, for the reason that its activities in relation to the principles, for the promotion of which it was incorporated, are disclosed to be most intimately and directly related to the election of candidates for public office which will insure the success of those principles and to the defeat of candidates who are opposed to them.

The point is stressed in defense of this application that the activities of the league were in the interest of the purposes for which it was organized and were in behalf of its church constituency from which it received financial support; that its work was for the education and enlightenment of the electors upon questions affecting the enforcement of prohibition and the suppression of the liquor traffic and that the political result from such activities was purely incidental.

That the methods adopted and put in operation by the league were practical to accomplish its ends there can be no question. There was a practical appreciation that the suppression of the liquor traffic must come through enactment of law and its enforcement, and the acceptance of this necessity led the league and its officers into the most effective field wherein its influence in behalf of its constituency was exerted by activities in behalf of candidates for public office who would use their power and vote to accomplish this purpose and against those who would not.

Many activities in connection with elections are educational but their motive is to affect the result, and to aid or defeat candidates or propositions submitted for a decision by the ballot box. When money is received for such purpose, the law requires publicity to disclose its source and amount and to test the sincerity for the public good of the means and propaganda employed. The law is predicated upon the fundamental truth that publicity will never hurt a good cause and has destroyed many bad ones.

Order may, therefore, be entered directing the Anti-Saloon League of New York to file a statement of the appointment of a treasurer, as provided by statute, with the secretary of state, and directing the Anti-Saloon League of New York, through its treasurer and the respondent officers, members and agents thereof, to file a statement of receipts, expenditures and liabilities, received, made and incurred in connection with the primary election of 1922 and also in connection with the general election of 1922, with ten dollars costs.

Ordered accordingly.