EMPIRE CITY JOB PRINT, INC., Plaintiff, *v.* JAMES G. HARBORD and Others, Defendants.

City Court of New York, New York County, March 23, 1933.

*Jenks & Rogers* [*Gustavus A. Rogers* of counsel], for the plaintiff.

*Campbell & McCool* [*William P. McCool* of counsel], for the defendant Harbord.

*Keyes Winter* [*C. D. Williams* of counsel], for the defendant Baldwin.

*Oliver B. James* [*C. D. Williams* of counsel], for the defendant Winter.

*Walter A. Miller*, for the defendant Calder.

*Carter, Ledyard & Milburn* [*Leslie D. Dawson* of counsel], for the defendant Pratt.

*Arnold Dumey* [*Samuel Falk* of counsel], for the defendant Falk.

RYAN, J.   Action to recover the sum of $1,285 on an account for goods sold and delivered by the plaintiff to the defendants at their request.   The defendants pleaded general denials.   A number of defendants were named, six of whom were served and appeared on the trial.   The complaint was dismissed as to the defendants James G. Harbord, Ruth S. Pratt and William M. Calder.   The trial proceeded as to the defendants Samuel Falk, Keyes Winter and Joseph Clark Baldwin, III.   The court reserved decision upon motions to dismiss the complaint, to strike out testimony and to set aside the verdict of the jury in favor of the plaintiff.

The facts, briefly stated, follow: Plaintiff, through its president,

William E. Lee, during the month of October, 1929, called to see the defendant Falk, whom he had known for a period of twelve years in connection with other political campaigns at rooms in the Cadillac Hotel on which were signs "Republican-Fusion Committee," and after a conversation received orders for two shipments of muslin banners which were subsequently delivered at those same rooms and were billed to the "Republican-Fusion Committee" at the same place. The orders were given by Falk, who was in charge of the headquarters and of obtaining supplies, on blank forms bearing the printed words "Republican-Fusion Campaign Committee."

The testimony also discloses that a campaign committee was organized, though its personnel was unknown to the defendants. A finance committee was also created of which the defendant Baldwin was the treasurer. The case was tried on the theory that defendant Falk was the manager and general agent of the Republican-Fusion campaign committee and that the orders were given by Falk on behalf of the defendants and with their authority and on their credit and as principal on his own behalf.

There is no conflict in the testimony, both sides having rested at the close of plaintiff's case. The witnesses were the president of the plaintiff corporation and the three said defendants. On several prior occasions Lee, the plaintiff's representative, had been informed by Falk that items ordered for a political committee were always paid for out of contributions received. At no time was it represented to Lee that Falk or any other individual member of the committee would satisfy any such obligation personally, nor was there any evidence that any of the defendants expressly or by implication pledged their credit to the payment of the plaintiff's account.

It is uncontradicted that there was in existence at the time in question a political committee to bring about the election of Fiorello H. LaGuardia as mayor of the city of New York. That Lee was fully cognizant of the fact that he was dealing with a political committee and not with Falk individually is a reasonable inference to be drawn from the evidence. A political committee exists wherever three or more persons co-operate to bring about the election or defeat of a candidate or proposition at an election, and if they make any expenditure of money in so doing they must report their receipts and disbursements. (*Matter of Woodbury*, 174 App. Div. 569.) The members of a political committee are not individually liable on contracts made in the name of the committee, unless the proof is sustained that they expressly or by implication pledged their individual credit to the payment of bills incurred in the name of the committee, or that express authorization was given to bind them-

selves individually. If any liability is to be fastened upon any of the defendants it must be by reason of their acts or the acts of their agents duly authorized by them. The authority to create such liability will not be presumed or implied from the existence of general powers to attend to or transact the business or promote the objects for which the committee was formed. It is for the plaintiff to plead and prove such authority.

To hold the defendants liable there must be that fair preponderance of evidence to impose individual liability upon them and the record in this case discloses no such proof. (*Hale* v. *Hirsch*, 205 App. Div. 308; *McCabe* v. *Goodfellow*, 133 N. Y. 89.) That members of a voluntary non-profit association are not liable as such on contracts entered into by such an association is well settled. (*McCabe* v. *Goodfellow*, 133 N. Y. 89; *Lightbourne* v. *Walsh*, 97 App. Div. 187; *Siff* v. *Forbes*, 135 id. 39.) Such liability can only be found when there is some intention on the part of the members to be bound. The very character of such associations negatives that intention. The individual liability of the members for contracts made by the committee or its representatives depends upon the principles of the law of agency. Nor can plaintiff rely on mere knowledge or ratification by Winter and Baldwin of Falk's acts in ordering the banners, for it does not necessarily follow that they became personally obligated to pay for the same. The testimony clearly indicates the parties contemplated that the plaintiff would have to look for payment to the funds contributed to the committee. Plaintiff stresses the incomplete organization of the committee at the time the orders were given, as testified to by Falk, and that this fact may have some bearing upon his individual liability. The evidence shows, however, that there was a committee in existence at the time the first order was given, although its organization was not then completed.

A political committee is by its very nature transitory. Is the fact that the preliminary steps toward organization have progressed no further than the combination of certain individuals with a common purpose, to change the character of their association together as a political committee? The evidence again shows that at least some persons had combined themselves for the purpose of advancing the interests of the candidate for political office prior to the date in question. And it is quite immaterial that the defendants who testified as witnesses for the plaintiff were unable to name all or any of their associates.

Falk acted, not as principal, but as an agent for a disclosed principal. No mistake, misrepresentation or deception as to any matter or fact is charged as against Falk in contracting with the

plaintiff, nor is there any proof that he acted without authority, or that he exceeded his authority, or that he assumed personal responsibility for the payment of the merchandise.

" When the agency is disclosed, and the contract relates to the matter of the agency, and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence, of an intention to substitute or to superadd his personal liability for, or to, that of the principal." (*Hall* v. *Lauderdale*, 46 N. Y. 70, 74; cited with approval in *Keska* v. *Modrakowski*, 249 id. 406, 408.) I am of the opinion, therefore, that the verdict of the jury in favor of the plaintiff and against the defendants should be set aside as contrary to the law and the complaint dismissed as to said defendants. Exception to plaintiff.