WARE *v.* BENEDIKT.

5-703                                         280 S. W. 2d 234

Opinion delivered June 13, 1955.

186

*H. A. Tucker* and *Bailey, Warren & Bullion,* for appellant.

*Richard W. Hobbs,* for appellee.

MINOR W. MILLWEE, Justice. The question for determination is the validity of a by-law of a public hospital which requires the approval and recommendation of a county medical society as a condition precedent to the right of a duly licensed physician and surgeon to practice his profession in such hospital.

Appellee, Dr. Alex Benedikt, is a native of Germany and graduated from Heidelberg University School of Medicine in 1924. After 4 years training in city and county hospitals at Stuttgart, Germany, he practiced medicine there until 1936 when he immigrated to this country and established his residence at Hot Springs, Arkansas. After passing the examination and complying with other requirements in the state of Texas he was admitted and licensed to practice medicine there. Subsequently, he was duly licensed to practice in this state by the Arkansas Medical Board on the basis of reciprocity with Texas. Since 1937 he has practiced medicine in the city of Hot Springs and is duly licensed as a qualified physician by the United States Department of Interior. During the past fifteen years appellee has applied for membership in the Garland County Medical Society 12 times and each time his application has been rejected. Officials of the society have declined to give a reason for the systematic exclusion.

Appellants are the administrator and members of the Board of Governors of the Ouachita General Hospital, a county hospital constructed under the provisions of Amendment 32 to the Arkansas Constitution and sup-

ported by public funds. All of the appellants are businessmen. Appellee's application to the Board of Governors for admission to practice in the hospital and to have his patients admitted for treatment therein was denied on the ground that he was not a member of the Garland County Medical Society as required by Article 5 of the hospital by-laws. Thereupon he instituted this suit to enjoin appellants from further denying him staff privileges and use of the facilities of said hospital as a duly licensed physician and surgeon. After appellants had demurred to the complaint they were advised by the attorney general that Article 5 of said by-laws was invalid and unconstitutional. An answer was then filed alleging that Article 5 had been amended so as to make the approval and recommendation of the Garland County Medical Society a prerequisite to admission to use of the hospital facilities by a physician instead of the former requirement of membership in said society.

Trial resulted in a finding in appellee's favor and entry of a decree restraining appellants from denying staff privileges in said hospital to appellee so long as he remained a duly qualified and licensed physician in this state and abided by all reasonable hospital rules and regulations applicable alike to all physicians on the medical staff. Hence the effect of the decree was to hold the amended by-law unreasonable and invalid and this is the sole issue presented.

The general rule is that a regular licensed physician and surgeon has the right to practice in the public hospitals of the state so long as he stays within the law and conforms to all reasonable rules and regulations of such institutions. 26 Am. Jur., Hospitals and Asylums, § 9; 41 C. J. S., Hospitals, § 5. While a duly licensed practitioner has no right *per se* to practice his profession in a public hospital and cannot complain of his exclusion therefrom by the operation of reasonable rules and regulations, it is equally well settled that he cannot be deprived of the right or privilege to such practice by rules, regulations, or acts of the institution's governing authorities which are unreasonable, arbitrary, capricious or

discriminatory. See *Findlay* v. *Board of Supervisors*, 72 Ariz. 58, 230 P. 2d 526, 24 A. L. R. 2d 841, and authorities cited in an exhaustive annotation of said case in 24 A. L. R. 2d 850.

It is undisputed that appellee was denied the right or privilege to practice in, or have his patients admitted to, the Ouachita General Hospital on the sole grounds (1) that he was not a member of the Garland County Medical Society and (2) that he did not have the approval and recommendation of said society. In *Hamilton County Hospital* v. *Andrews*, 227 Ind. 217, 84 N. E. 2d 469, a rule of a county hospital conditioning the right of a duly licensed physician to practice therein on his being a member of a county medical society was held unreasonable and invalid. In commenting on the rule as applied to said applicant the court said:

"His admission to this society depends entirely upon the sole determination of the society. *Medical Soc. of Mobile County* v. *Walker*, 1944, 245 Ala. 135, 16 So. 2d 321; *Harris* v. *Thomas*, Tex. Civ. App. 1920, 217 S. W. 1068; *McKane* v. *Adams*, 1890, 123 N. Y. 609, 25 N. E. 1057, 20 Am. St. Rep. 785. 4 Am. Jur., Associations and Clubs, § 11, p. 462. Whether he could ever become a member depends upon conditions beyond his control. By this rule the hospital again delegates its power to determine what physicians may use its facilities. It amounts to a preference in favor of the society and a discrimination against those physicians who by choice or otherwise, are not members of same."

Like other courts, we recognize it as a matter of general knowledge that medical societies have rendered a great and valuable public service over the years in developing and maintaining high standards of professional conduct and practice, and no implication is intended that such organization may not adopt any reasonable methods to preserve such standards. *Group Health Cooperative* v. *King County Medical Soc.*, 39 Wash. 2d 586, 237 P. 2d 737. However, we agree with the chancellor's finding that the amended by-law in question is un-

reasonable and invalid. As affecting validity, we perceive no material difference between a rule that makes membership in a medical society a prerequisite to staff privileges and one that requires approval and recommendation by the membership of said society. An organization that has consistently refused a physician membership over a period of 15 years without any announced reason would hardly be expected to approve and recommend such a physician to staff privileges in the hospital. The membership of a society that would reject the application for membership in the first instance would in all probability withhold its approval in the second instance. It would be contrary to human nature to indulge in the supposition that they would do otherwise.

In holding the by-law unreasonable and discriminatory we do not mean to infer that a public hospital may not validly enact rules and regulations applicable to all physicians and surgeons alike and which bear a reasonable and fundamental relation to the safety, interest and welfare of patients and the general public. The by-law in question does not meet this test. In urging its reasonableness appellants assert the necessity of having some group to whom they can turn for advice in considering the qualifications of applicants for staff membership since appellants themselves are not medical men. But the fact that appellants are unlearned in medicine does not preclude them from procuring the assistance and advice of medical and hospital organizations and groups, including county societies, in the formulation of rules which bear a reasonable relationship to public safety and welfare. A medical society is a private organization whose membership conceivably may bestow or withhold approval of a fellow physician's application for a valid reason, or for no reason at all, under the by-law in question. That appellee was not a member of their group might be reason enough for them to withhold approval of his application.

Appellants also argue that it was incumbent upon appellee to resubmit his application for admission to

practice in the hospital after appellants amended Article 5 of the by-laws and that the instant suit is, therefore, premature. Reliance is had on the general rule to the effect that one must exhaust his administrative remedies before he is entitled to apply for injunctive relief. But it should be remembered that appellee had exhausted his administrative remedy when he filed this suit and any change in the *status quo* in that respect was occasioned by appellant's action in changing the rules while the game was in progress. Thus equity had complete jurisdiction when the suit was filed and appellants should not be permitted to defeat it by a change of rules where the court could have justifiably concluded, in the circumstances, that a reassertion of the administrative remedy would have been a vain and fruitless undertaking.

The decree is affirmed.