# CHARLESTON.

### *In Re Application* OF BOYD ADKINS *et als.*

Submitted March 19, 1919.  Decided March 25, 1919.

ATTORNEY AND CLIENT—*Admission to Practice—Joint Legislative Resolution.*

The Legislature cannot, by the passage of a joint resolution requiring the court to grant licenses to certain named individuals to practice law, avoid the requirements of a general statute, and rules of the court made and promulgated pursuant thereto, regulating the granting of such licenses and prescribing the length of study and degree of preparation required of the applicant in order to entitle him thereto.

Application by Boyd Adkins and others for licenses to practice law.          *Licenses refused.*

*J. M. Meek* and *J. M. Rigg,* for applicants.
*R. S. Spilman,* for protestants.

WILLIAMS, JUDGE:

Boyd Adkins of Wayne County, W. R. Meservie of Ritchie County and W. M. Hefner of Braxton County have applied for license to practice law. They present no certificates from the State Board of Law Examiners to show that they have passed the required examination entitling them to a license, according to section 1, chapter 119 of the Code, and an order of this court made pursuant thereto on the 6th day of May, 1915, prescribing a certain standard of preliminary education to be attained by all candidates, and also prescribing the length of time they should devote to the study of law, either in a law office under the direction of some member of the bar, or as a student in some approved law school. Instead of such certificates they have presented joint resolutions of the House and Senate of the Legislature, reciting facts which show they possess all the requisite qualifications now required of candidates for license, except those relating to their educational preparation and length of time they have studied law. Respecting such preparation, the resolutions say, it is impracticable, because of their age, for them now to prepare to take the state bar examination, but that they possess the qualifications of good lawyers, in consideration whereof the Supreme Court of Appeals of West Virginia is "requested" to issue license to M. W. Hefner and "required" to issue licenses to said Boyd Adkins and W. R. Meservie.

It is not contended that these joint resolutions have the force or effect of a statute, or that they amount to more than an ascertainment by the Legislature of the qualifications of the applicants to practice law, and their recommendation to the court for licenses. Even if the resolutions had the form required by section 1, article 6 of the Constitution, for an act of the legislature, it would nevertheless be unconstitutional for three reasons: (1) it was not read on three separate days in each house as required by section 29, article 6 of the Constitution: (2) it was not presented to the Governor for his approval or disapproval as required by section 14,

article 7 of the Constitution; and (3) it contravenes section 39, article 6 of the Constitution. After forbidding the passage of special laws covering a large number of enumerated subjects, the section last cited concludes with this general provision: "and in no case shall a special act be passed, where a general law would be proper, and can be made applicable to the case, nor in any other case in which the courts have jurisdiction, and are competent to give the relief asked for."

There is now, and for some years has been, a general statute intended to cover every case of application for license to practice law in this state. It is not necessary in this opinion to enter upon a discussion of the question to what extent the Legislature may, in the exercise of its police power, regulate the granting of licenses to practice law. It is enough to say that whatever may be the extent of its power in this respect it must exercise it by general, and not by special laws. Section 1, chapter 119 of the Code, amended and re-enacted by chapter 50, Acts 1897, authorizing this court to prescribe the degree of preparation and the period of study required of applicants and to provide for their examinations, either by the court or otherwise, is such a general regulatory statute; and pursuant thereto this court, by an order entered of record on the 6th of May, 1915, prescribed certain general rules which have been widely published throughout the state and are pretty generally understood. So far as we know, this is the first attempt on the part of an applicant for license to evade or avoid those requirements. They are now the general law on the subject and must be observed, so long as they are continued as such.

The right to practice the law is not one of the citizen's inherent rights, but is a privilege which may be granted him within prescribed regulations, under the exercise of the state's police power, 6 C. J. 571; and the granting of the license is a judicial, and not a mere ministerial act. *In re Application to Practice Law,* 67 W. Va. 213, and cases cited at page 218.

For a number of years the State Bar Association has been diligently striving to elevate the educational standard of the legal profession; in fact this movement has been general over

the country, both in the American Bar Association and in the various state bar associations. The most approved law schools also have been gradually increasing the degree of preparation required of students before their graduation. Nearly all of the first class colleges of law now require at least three years study in law before a student is entitled to receive his diploma, and, in addition thereto, some of them require the student to be an academic graduate of some reputable college. To comply with the request of the Legislature in the present instances would seem to be a step backward, which the court is not inclined to take. It is no hardship upon the applicants to require them to comply with the present regulations. If a man has sufficient ability to make a good lawyer, with a limited amount of literary preparation, as the Legislature has said respecting these gentlemen, he can surely make a much better lawyer if he contents himself for a while, in order to pursue the required preliminary studies, until he is able to comply with the present, reasonable requirements for admission to the practice. He will be a little longer in obtaining his license, but he will be all the better qualified when he begins, and consequently will make more rapid and successful progress, and in the end will have no regrets.

We are constrained to refuse the licenses.

*Licenses refused.*

POFFENBARGER, JUDGE, *(concurring in the conclusions):*

I agree that the joint resolutions relied upon by the applicants do not have the force of legislative acts, and, therefore, that they constitute no legal basis for these applications.

As mere memorials to the court in behalf of the applicants they do not justify any departure on the part of the court, from the requirements of the statute regulating the licensing of attorneys. Like all other statutory regulations of professions, this one binds the officers and tribunals charged with its administration, to apply it without discrimination, to the end that all may know what their rights are and may stand

equal before the law. To grant licenses upon mere petitions in the form of legislative resolutions would be tantamount to the setting aside of a law providing a different method designed to systematize the granting of such licenses, procure a reasonable degree of proficiency in persons practicing law in the courts and prevent discrimination in the granting thereof by the court or anybody else.

If these applicants are able lawyers, and, by reason of their ages, find it impracticable to comply with the requirements as to preliminary education, they must have been able to pass bar examinations on purely legal questions, before these very recent regulations were put into effect. When they were prescribed, they contained a saving clause in favor of applicants deficient in point of standard literary and legal preparation. A reasonable period of time was allowed them for examination before the regulations became effective, and published notice thereof given. Their neglect to avail themselves of it constitutes a very large obstacle to their appeal for a special rule or exception in their favor, if the court had discretionary power to grant it.

Nothing in these applications or the resolutions upon which they are predicated calls for any declaration on the part of the court, as to any real or supposed limitations upon the powers of the legislature over the subjects of licenses of attorneys and admissions to practice the legal profession. The legislature has passed no law purporting to innovate upon the judicial claim of exclusive authority over these subjects. I decline either to sound a warning to a coordinate branch of the government against an act it has not performed nor threatened to perform, or to enter upon a discussion of a question not submitted to us upon any pleadings or other procedure raising it. Therefore, I do not concur in what has been said on this subject, in the opinion prepared by Judge Williams and adopted by a majority of the court; but I concur in the refusal of the licenses applied for.

JUDGE LYNCH concurs in this opinion.